The United States District Court for the Eastern District of Pennsylvania

2021 MAR 29 P 1:44
**601 Market St, Philadelphia, PA 19106**

USDC-EDPA

Rosaly Figueroa Sui Juris, Pro Per (Not Pro'se)
Leonard Antonelli Sui Juris, Pro Per (Not Pro'se)
131 Andaloro Way
Westville, NJ 08093
856-214-9293
856-576-8948

Petitioners

In the matter of;

Angelo Bruno-Perez D.O.B 10/26/2016

v.

**EMERGENCY HEARING**

Superior Court of New Jersey
Chancery Division / Family Part
Gloucester County

The state of New Jesey Division of Child Protection and Permanency et, al
-Social Worker Jameela Hull
- Social Worker Kelly Sutherland
- Jonn Doe's Jane Doe's

Respondents

PETITION FOR A WRIT OF PROHIBITION ON THE GROUNDS;

THIS MATTER DOES NOT FALL IN THE LOWER SUPERIOR COURT OF NEW JERSEY LOCATED IN THE COUNTY OF GLOUCESTER 70 HUNTER ST WOODBURY, NJ, JURISDICTION AND FOR THE

DEPRIVATRION OF RIGHTS UNDER COLOR OF LAW 18 U.S. CODE § 242 AND CONTITUTIONAL RIGHTS;

MOTION AND DEMAND THE COURT FOR THE IMMEDIATE RETURN OF OUR SON ANGELO BRUNO-PEREZ;

MOTION TO CLAIM AND EXCERSICE CONSTITUTIONAL RIGHTS AND REQUIRE PRESIDING JUDGE OF THIS COURT ASSIGNED TO THIS MATTER TO RULE UPON THIS EMERGENCY HEARING FOR A WRIT OF PROHIBITION, MOTION FOR THE IMMEDIATE RETURN OF OUR SON ANGELO BRUNO-PEREZ, AND ALL PUBLIC OFFICERS OF THIS COURT TO UPHOLD SAID RIGHTS;

Please disregard any part of this motion that is not relative to this matter and the rest is to remain valid for the court to accept.

# *TABLE OF CONTENTS*

*Emergency Hearing* ................................................ *Page 1*

*Introduction* ........................................................ *Page 4*

*Basis for Jurisdiction* ................................................ *Page 7*

*Conclusions and Relative Argument* ............................... *Page 8*

*General Family Rights Case Laws* ................................. *Page 11*

*Right to Resist coercive state intervention in the family* ..... *Page 13*

*Affidavit to proceed in forma pauperis* ............................ *Page 15*

*Certificate of Service* ................................................ *Page 17*

*Exhibits* ............................................................ *Page 18,19*

INTRODUCTION

1. Comes now, Rosaly Figueroa Sui Juris, Pro Per **( Not Pro'se)** and Leonard Antonelli Sui Juris, Pro Per **(Not Pro'se)** moves this court to honor, uphold and abide by the oaths taken by the attending Presiding judge in this matter and attending court officers, pursuant to the Constitution of the United States of America, Articule VI, Clauses 2 and 3, and the Constitution of the Republic of New Jersey:

2. To provide due process of law, pursuant to the 1st, 4th, 5th, 6th, 7th, 9th and 14th amendments of the constitution of the United States of America, and pursuant to the Constitution of the Republic of New Jersey, and as required by the aforementioned oaths taken by the attending presiding judge in this matter:

3. To provide equal protection under the law, as required by the National and State Constitutions and pursuant to the referenced oaths.

4. To respect, protect, and uphold the Rights of Rosaly Figueroa Sui Juris, Pro Per, Leonard Antonelli Sui Juris, Pro Per and of our son Angelo Bruno-Perez Republic sovereigns of New Jersey, which Rights are guaranteed in the National and State Constitutions, pursuant to referenced oaths and our Natural unalienable God given Rights guaranteed and protected by the Constitution of the United States.

5. To acknowledge and uphold the Constitution of the United States of America as the Supreme Law of this court, in this matter, pursuant to the Constitution of the Republic of New Jersey, the National Constitution is the Supreme Law of New Jersey.

6. On March 15, 2021, I, Rosaly Figueroa and Leonard Antonelli filed for and Emergency Hearing to the Superior Court Judge, John J. Mathuessen for a Motion to claim and exercise our Constitutional Rights which have been violated and for the Immediate return of our son Angelo Bruno-Perez on the grounds that;

    a. On the Emergency Hearing of March 15, 21 Judge John J. Mathuessen acted as our adversary. Every time I, Rosaly Figueroa or Leonard Antonelli made our argument of on our defense, Judge John J. Mathuessen would make facial expressions rolling his eyes, looked away towards his sides as it he did not want to hear us and with an

attitude. In addition, the court lacks subject matter Jurisdiction, knowingly and willingly acted outside of limited jurisdictional boundaries and his oath of office.

b. In the Emergency Hearing which was done through video and not in person as Leonard Antonelli and I, Rosaly Figueroa specifically requested. Were informed that because Judge John J. Mathuessen was not present in the building the Hearing would be held through video and that the only hearings heard in person are the ones that are scheduled only. That he was only attending video hearings because of the limited amount of persons allowed in the court rooms. This is total unequal treatment of the Law, and unconstitutional. However, I, Rosaly Figueroa and Leonard Antonelli supposed to be making a in person appearance for an upcoming hearing on April 7, 2021 for a final determination. As far as we are concerned the law applies to all and no one is above it. Unless the superior court and all public government officials within the superior court believe that they are and are acting above the law and outside limited jurisdiction.

c. In addition, a court cannot terminate our parental rights based on preponderance of evidence as Judge John J. Matheussen stated on the record. See attached copy of the Emergency Hearing Motion provided and submitted to the New Jersey Superior Court, Gloucester County on March 15, 21. On Page 6 section (a). See attached Exhibit 1 page 17 submitted with this current Emergency Hearing / Petition for a Writ of Prohibition and Motion.

d. Santosky v. Kramer, 455 U.S. 745 U.S. 18 (1982)
The court declared unconstitutional a New York statute that authorized termination of parental rights based on a preponderance of the evidence. Santosky is the first Supreme Court case to hold that even after parents are found unfit in a contested court proceeding, they retain constitutionally protected parental rights.

e. Judge John J. Mathuessen admitted that he read our Emergency Hearing Motion and the attached Exhibits 1-5 when I, Rosaly Figueroa on the record asked him if he read the Emergency Hearing for the Motion of the Emergency Hearing submitted to the Superior court and advised him that if he did, he wouldn't be acting out of his jurisdiction, to which also is in violation of his oath of office. Judge Mathuessen denied and reverted our Motion for an Emergency Hearing to his order to Show cause. A copy of this order has been submitted and provided as Exhibit 2. See page 18.

f. Therefore, it is relevant that violations of Leonard Antonelli and I, Rosaly Figueroa

and of our son Angelo Bruno- Perez Rights, Freedom, or Property, the federal government, or any agent thereof, would be acting in an illegal and unlawful excess, clearly outside the limited boundaries of federal jurisdiction.

g. *A copy of the Emergency Hearing Motion has been provided with attached exhibits 1-5 have submitted to The Superior Court of New Jersey, Chancery Division- Family Part, County of Gloucester located at 70 Hunter St, Woodbury, NJ 08096 and also have been provided to this court as Exhibit 1 page 17.)*

h. We filed for and Emergency Hearing at the New Jersey Superior mentioned on Page 4 paragraph (6) and not an order to show cause pursuant to Judge John J. Mathuessen court order to show cause. A copy of this order has been provided and attached as Exhibit 2 on page 18.

i. Our Emergency Hearing that took place on March 15, 21 were also for matters of the demand of the immediate return of our son. Due to the fact that there was never case to begin with and proving that the social workers Jameela Hull and Kelly Sutherland who work for the Division of Child Protection and Permanency, not only lied on the record sworn under oath, stating and fabricating allegations, accusations, speculation and hypothesis. To which I, Rosaly Figueroa told judge John J. Mathuessen that he allowed so, that the division social workers Jameela hull and Kelly Sutherland go in a fishing expedition to further create a fictitious case in a totally bias court hearings that also lack due process of law.

j. That the social workers Jameela Hull, another buddy worker supposedly named Kelly John doe, Jane Doe and Kelly Sutherland in collusion, co-conspiring knowingly and willingly, and had our son illegally abducted and kidnapped without a warrant from a court of proper jurisdiction through their own actions of retaliation, false allegations, accusations and vindictive motives against us.

7. **Furthermore, because of the fact that there is no complaint and the charges have been dismissed because I been declared innocent. I, Rosaly Figueroa also provided a copy of a Dismissal of the charges brought against me that where dismissed attached to the Emergency Hearing motion submitted to the superior court on March 15, 20 under the attached Exhibit 1.**

8. The fact of the matter is that there was never a case to begin with. Our son Angelo Bruno-Perez was never in any imminent danger or harm of any kind. Our son has been

9. illegally seized and removed without a proper warrant from a court of proper jurisdiction without there being any kind of imminent danger or exigent circumstances from inception that would even justify a warrant or be grounds enough or sufficient enough for a probable cause. As indicated in the Emergency Hearing motion of March 15, 21 submitted and provided to the Superior court of Gloucester county, in page 2 of 18 section (c) with the attached Notice of Emergency Removal under Exhibit 2 which is not a warrant as documented. See Exhibit 1 in page 17 of this Emergency Hearing / Writ of Prohibition.

10. On the court hearing date of March 23, 21 scheduled for 1:30 PM but was contacted by the court at 2:57PM through a 1-646-568-7788 phone number. Proceeded through voice call only and not video. However, in this hearing once again Judge John J. Mathuessen acted as our adversary. He refuses to yield to the law of the courts limited jurisdiction and to our belief continues these unfair, prejudice, bias, and unequal kangaroo court hearings. That lacks due process and the right to a Jury by trail of our peers protected and guaranteed under the 5th and 14th Amendment.

11. I, Rosaly Figueroa and Leonard Antonelli also petition this Emergency Hearing for a Writ of Prohibition, to preclude Judge John John J. Mathuessen, from the New Jersey Superior Court from further presiding and continuing these impartial, unfair, unequal, lack of due process and bias matter on the upcoming Final Determination Trail of April 7, 20 scheduled in person for 9:00 AM. It is our belief that we will not receive fair, equitable and equal treatment due to Judge John J. Mathuessen clear bias towards us and noticeable favoritism toward the underlying respondents. At this point we also believe that no matter what kind of prove and evidence we show and submit to the Superior Court, Judge John J. Mathuessen would only overlook it, or will not accept it into the record.

**Basis for Jurisdiction;**

12. This court has jurisdiction to issue a Writ of Prohibition under 28 U.S Code § 1651 (a) (b), and in cases under federal statue or the United States Constitution, the United States District court of New Jersey has subject matter jurisdiction, 28 U.S.C 1331, to hear this matter **De Novo** and the power to restrain and cease and deceased ministerial acts.

    a. Thompson v Smith, 15 SE 583.
    "When acting to enforce a statue and its subsequent amendments to the present date, the judge of the municipal court is acting as an administrative officer and **not in a judicial capacity**: courts in administering or enforcing

statues do not act judicially, but merely ministerially... but merely act as an extension as an agent for the involved agency – but **only in a "ministerial" and not a discretionary capacity..."**

13. A writ of prohibition is an appropriate remedy for the erroneous denial of a motion for disqualification.

    a. Lynch v State, 2 So. 3d 47, 78 (Fla. 2008)
       " A motion to recuse or disqualify a trial judge is legally sufficient when the alleged facts would create in a reasonably prudent person a well – founded fear of not receiving a fair and impartial trial. "S.S. v Dep't of Children & Families, 298 So. 3d 1184m 1185 (Fla. 3d DCA 2020) (quoting Colarusso v. Colarusso, 20 So, 3d 985,0986 (Fla.3d DCA 2009);

**Conclusions and Relative Argument;**

14. "We have in our political system a government of the United States and a government of each of the several States. Each one of these governments is distinct from the others, and each has citizens of its own who owe its allegiance, and whose rights, within its jurisdiction, it must protect. The same person may be at the same time a citizen of the United States and a Citizen of a State, but his rights of citizenship under one of these governments will be different from those he has under the other."
    Slaughter House Cases United States v. Cruikshank, 92 U.S. 542 (1875).

15. "THE UNITED STATES GOVERNMENT IS A FOREIGN CORPORATION WITH RESPECT TO A STATE." [ emphasis added] Volume 20: Corpus Juris Sec. 1785: NY re: Merriam 36 N.E. 505 1441 S. Ct. 1973, 41 L. Ed. 287.

16. This is further confirmed by the following quote from the Internal Revenue Service: When referring to this "District" United States, the Internal Revenue Code uses the term "WITHIN" the United States. When referring to the several States, the Internal Revenue Code uses the term "WITHOUT" the United States.

17. Dozens, perhaps hundreds, of court cases prove that federal jurisdiction is limited to the few federal territory areas indicated. For example, in two Supreme Court cases, it was decided: "The law of Congress in respect to those matters do not extend into the territorial limits of the states, but have force only in the District of Columbia, and other

places that are within the exclusive jurisdiction of the national government,"

18. Caha v. United States. 152 U.S., at 215.
"We think a proper examination of this subject will show that the United States never held any municipal sovereignty, jurisdiction, or right of soil in and to the territory of which Alabama or any of the new states were formed...."

19. "Because, the United States have no constitutional capacity to exercise municipal jurisdiction, sovereignty, or eminent domain, within the limits of a State or elsewhere, except in the cases in which it is expressly granted..."

20. Likewise, Title 18 of the United States code 7 specifies that the "territorial jurisdiction" of the Unites States extends only **Outside** the boundaries of lands belonging to any of the several States.

21. Therefore, in addition to the fact that no unrevealed federal contract can obligate I, Rosaly Figueroa and Leonard Antonelli to perform in any manner without our fully informed and uncoerced consent, likewise, no federal statutes or regulation apply to us or have any jurisdiction over us. We hereby affirm that we do not reside or work in any federal territory of the "District" United States and that therefore no U.S. federal government or regulation have any authority over us.

22. Due to the fact that Leonard Antonelli Sui Juris, Pro Per (not Pro'se) and I Rosaly Figueroa Sui juris, Pro Per (Pro'se) may not have experience, knowledge in law, court hearing or proceedings as that of experienced attorneys or level of experience as attorney's, it would only be natural for any individual proceeding as a sovereign litigant to find themselves outside normal understanding when in court room proceedings. Sovereign litigants are not bound to the rules governing the courts and have a constitutional protected and guaranteed right to proceed in there own matters as they see fit so long as they are fully capable and competent to do so. As inexperienced sovereign litigants are normally not use to Law terms, definitions, or proceedings. Therefore, being uncommon to common people in the real world and outside courts usual use and terminologies.

23. However, it is also not a reason for sovereign litigants to be denied any rights on how they proceed or wish to proceed, make arguments as they fit in relevance of a matter

and defense as long as they are capable and competent to do so to the best of their knowledge and ability. It also does not justify any reason to where any agents of the government, courts, and attorney's could bend and alter the meaning of caselaws and laws where they give caselaws and laws terms unintended meanings other than what they are in actual meaning of.

24. Use of Sematics;

a. There are some immature people with mental imbalances, such as the craving to dominate other people, who masquerade as "government." Just because they alter definitions of words in the law books to their supposed advantage, doesn't mean Leonard Antonelli and I, Rosaly Figueoa accept those definitions. The fact that they define the words "person," "address," "mail," "resident," "motor vehicle," "driving," "passenger," "employee," "income," and many other, in ways different from the common usage, so as to be associated with a subject or slave statues, means nothing in real life. Because the courts have become entangled in the game of semantics, be it known to all courts and all parties, that if Leonard Antonelli and I, Rosaly Figueroa have ever signed any document or spoken any words on record, using words defined by twists in the law books different from common usage, there can be no effect whatsoever on our individual Sovereign status in society thereby, nor can there be no created any obligation to perform in any matter, by the mere use of words. Where the meaning in the common dictionary differs from the meaning in the law dictionary, it is the meaning in common dictionary that prevails, because it is more trustworthy. Such compelled and supposed "benefits" include, but are not limited to, the aforementioned typical examples. Our use of such alleged "benefits" is under duress only and is with full reservation of all our Common Law Rights. We have waived none of our intrinsic rights and freedoms by use thereof. Furthermore, our use of compelled "benefits" may be temporary, until better alternatives become available, practical and widely recognized.

**General Family Rights Case Laws;**

1. Meyer v. Nebraska, 262 US 390 (1923).
   The court held that a statute forbidding the teaching of the German language impermissibly encroached on the liberty parents possess. The Court explained that Due Process Clause of the Fourteenth Amendment protects this liberty, ***incorporating "the right to marry, establish a home, and bring up children."***

2. J.B. v. Washington County (10th Cir. 1991)

The forced separation of parent from child, even for a short time (in this case 18 hours), represents a serious infringement upon the rights of both.

3. Malik v. Arapahoe Cty, Department of Social Services (10th Cir. 1999)
Absent extraordinary circumstances, apparent has a liberty interest in familial association and privacy that cannot be violated without adequate pre-deprivation procedures.

4. Paris Adult Theater v. Slaton, 413 US 49, 65 (1973)
In this case, the court includes the right of parents to rear children among rights deemed **fundamental** or implicit in the concept of ordered liberty... This privacy right encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and **child rearing**... of... Pierce v Society of Sister; Meyer v. Nebraska.... Nothing, however, in this court's decision intimates that there is any fundamental privacy right implicit in the concept of ordered liberty to watch obscene movies and places of public accommodation. [emphasis added]

5. Carey v. Population Services International, 431 US 678, 684-686 (1977)
Once again, the Court includes the right of parents in the area of "**child rearing** and education" to be a liberty interest protected by the Fourteenth Amendment, requiring an application of the "compelling interest test." Although the Constitution does not explicitly mention any right of privacy, the Court has recognized that one aspect of the **liberty protected** by the Due Process Clause of the 14th Amendment is a "right of personal privacy or a guarantee of certain areas or zones of privacy... This right of personal privacy includes the interest and independence in making certain kinds of important decisions...While the other limits of this aspect of privacy have not been marked by the courts, it is clear that among the decisions that an individual may make without unjustified government interference and personal decisions relating to marriage.. family relationships, Prince v. Massachusetts, 321 US 158 (1944) and **child rearing and** education, Pierce v. Society of Sisters, 268 US 510 (1925); Meyer v. Nebraska, 262 US 390 (1923). [emphasis added]

6. Maher v. Roe, 432 US 464, 476-479 (1977)
We conclude that the Connecticut regulation does not impinge on the **fundamental right** recognized in Roe... There is basic difference between direct state interference with a protected activity and state encouragement of an

alternative activity consonant with legislative policy... This distinction is implicit in two cases cited in Roe in support of the pregnant woman's right under the 14th Amendment. In Meyer v. Nebraska.... The court held that the teacher's right thus to teach and the right of parents to engage in so to instruct their children were within the **liberty of the 14th Amendment**... In Pierce v Society od Sisters... the court relied on Meyer... reasoning **the 14th Amendment's concept of liberty** excludes any general power of the State to standardize its children by forcing them to accept instruction from public teachers only. The Court held that the law unseasonably interfered with the liberty of parents and guardians to direct the upbringing and education of the children under their control...

7. <u>City of Akron v Akron Center for Reproductive Health Inc., 416, 461 (1923)</u>
This case includes, in a long list of protected liberties and fundament rights, the parental rights guaranteed under Pierce and Meyer, The Court indicated a compelling interest test must be applied. Central among these protected liberties is an individual's freedom of personal choice in matters of marriage and family life...Roe...Griswold... Pierce v. Society of Sisters.... Meyer v. Nebraska... But restrictive state regulation of the right to choose abortion **as with other fundamental rights subjects to searching judicial examination, must be supported by compelling state interest**. [emphasis added]

8. <u>Lassiter v Department of Social Services, 452 US 18,37 (1981)</u>
In Lassiter, it was "not disputed that state intervention to terminate the relationship between a parent and a child must be accomplished by procedures meeting the requisites of the Due process Clause"... The absence of dispute reflected this Court's historical recognition that freedom of person choice in matters of family life is a **fundamental liberty** interest protected by the 14 Amendment .... Pierce v. Society Sisters... Meyer v. Nebraska.

9. <u>Troxel v. Granville, 530 U.S. 57 (2000)</u>
In this case the United States Supreme Court issued a landmark opinion on parental liberty. The case involved a Washington State statue which provided that a "court may order visitation rights for any person when visitation may serve the best interest of a child, whether or not there has been any change of circumstances. "Wash. Rev. Code § 26.10.160 (3). The U.S. Supreme Court ruled that the Washington Statue "Unconstitutionally interferes with the fundamental right of parents to rear their children." The Court went on to examine its treatment of parental rights in previous cases:

In subsequent cases also, we have recognized the fundamental right of parent to make decisions concerning the care, custody and control of their children... Wisconsin v. Yoder, 406 US 205, 232, 32 L. Ed. 2d 15,92 S. Ct. 1526 (1972). ("The history and culture of western civilization reflect a strong tradition of parental concern for the nurture and this case clearly upholds parental rights, in essence, this decision means that the government may not infringe parent's right to direct the education and upbring of their children unless it can show that it is using the least restrictive means to achieve a compelling government interest.

**Right to Resist coercive state intervention in the family;**

10. Duchesne v. Sugarman, 566 F. 2d 817 (2nd Cir. 1977) The Second Circuit held " The rights of the family to remain together without the coercive interference of the awesome power of the state... encompasses the reciprocal rights of both parent and child." The court explained that children have the constitutional right to avoid dislocation from the emotional attachments that derive from the intimacy of daily association with the parent."

11. Blackburn v. Alabama 361 US 199, 206 (1960) "Coercion can be mental as well as physical."

12. Cassady v. Tackett 938 F. 2d 693 (6 Cir. 1991) Coercive or intimidating behavior supports reasonable belief that compliance is compelled.

13. Florida v. Bostick S. Ct (1991) "Consent" that is the product of official intimidation or harassment is not consent at all. Citizens do not forfeit their constitutional rights when they are coerced to comply with a request that they would prefer to refuse.

14. North Hudson DYFS v Koehler Family (2001) The court explained "absent some tangible evidence of abuse or neglect, the Courts do not authorize fishing expeditions into citizens' houses. Mere parroting of the phrase "best interest of the child" without supporting facts and a legal basis is insufficient to support a Court order based on reasonableness or any other ground.

CERTIFICATE OF SERVICE

I, Rosaly Figueroa and Leonard Antonelli submit and provided this EMERGENCY HEARING for a WRIT OF PROHIBITION, MOTION AND DEMAND THE COURT FOR THE IMMEDIATE RETURN OF OUR SON ANGELO BRUNO-PEREZ, MOTION TO CLAIM AND EXCERSICE CONSTITUTIOAL RIGHTS AND REQUIRE PRESIDING JUDGE OF THIS COURT ASSIGNED TO THIS MATTER TO RULE UPON THIS EMERGENCY HEARING FOR A WRIT OF PROHIBITION, MOTION FOR THE IMMEDIATE RETURN OF OUR SON ANGELO BRUNO-PEREZ, AND ALL PUBLIC OFFICERS OF THIS COURT TO UPHOLD SAID RIGHTS, AFFIDAVIT OF FORMA PAUPERIS, CERTIFICATE OF SERVICE and attached exhibits to this court. We invoke our God given Rights under Procedure and Common Law. I, Rosaly Figueroa and Leonard Antonelli admit these facts as true and factual to the best of our ability and knowledge under the Heavenly Father, the Son, and the Holy ghost.

Rosaly Figueroa Sui Juris, Pro Per
U.C.C 1-207/1-308 All RIGHTS RESERVED WITHOUT PREJUDICE

3.29.21
Date

Leonard Antonelli Sui Juris, Pro Per
U.C.C 1-207/1-308 ALL RIGHTS RESERVED WITHOUT PREJUDICE

3.29.21
Date

Notary Public

3/29/21
Date

JINNY GUZMAN
Commission # 50148911
Notary Public, State of New Jersey
My Commission Expires
January 19, 2026