NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| ROSALY FIGUEROA, *et al.*, | : | |
| Plaintiffs, | : | Civil No. 21-9970 (RBK/MJS) |
| v. | : | **OPINION** |
| SUPERIOR COURT OF NEW JERSEY, *et al.*, | : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant Superior Court of New Jersey's Motion to Dismiss (ECF No. 18) and Plaintiffs' Motion to Dismiss Defendant's Motion (ECF No. 19). For the reasons discussed herein, Defendant's Motion is **GRANTED** (ECF No. 18), and Plaintiffs' Motion (ECF No. 19) is **DENIED**.

**I.     BACKGROUND**

The facts of this case are difficult to surmise from Plaintiffs' Complaint. (ECF No. 2, "Compl."). Plaintiffs Rosaly Figueroa and Leonard Antonelli (collectively "Plaintiffs") are the parents of A.B.P., a minor child. (*Id.*). On February 7, 2020, employees of the New Jersey Division of Child Protection and Permanency ("NJDCPP") removed A.B.P. from Plaintiffs' custody without a court order pursuant to N.J.S.A. §§ 9:6-8.29, 9:6-8.30. (ECF No. 2-1, Ex. 2 at 24-25[1]). As best the Court can discern from a subsequent state court criminal summons issued to

---

[1] We include the PDF page numbers listed on the ECF header for clarity.

Plaintiff Figueroa, it appears that the removal was based on Plaintiffs' alleged failure to provide A.B.P. with proper medical care. *See* (ECF No. 2-1, Ex. 1 at 22-23); (Compl. ¶ 7).

We take judicial notice that Plaintiffs initiated a federal action by filing a complaint (ECF No. 1 in Case No. 20-1314) and a Motion for an *ex parte* Temporary Restraining Order, (ECF No. 1-3 in Case No. 20-1314), seeking to prevent A.B.P.'s removal that same day, and later filed an additional federal suit related to A.B.P.'s removal under Docket Number 20-2003. *See Figueroa v. NJ Dep't of Child & Fam. Servs.*, No. 20-1314, 2020 WL 948772, at *3 (D.N.J. Feb. 27, 2020). These matters were eventually consolidated, and this Court dismissed Plaintiffs' cases on February 27, 2020. *Id.*

Over a year later, on March 29, 2021, Plaintiffs filed the instant action. The instant case also stems from the February 2020 removal of A.B.P. as well as from the associated custody proceedings in New Jersey Superior Court.[2] *See* (Compl. ¶¶ 6-11). Plaintiffs name the Superior Court of New Jersey, NJDCPP, and NJDCPP employees Jameela Hull and Kelly Sutherland as defendants, alleging the defendants violated Plaintiffs' constitutional rights. (*Id.* ¶¶ 1, 2, 6, 8-11). Plaintiffs state that Defendants Hull and Sutherland "illegally abducted" A.B.P. and then lied under oath about it. (*Id.* ¶ 6). Plaintiffs also challenge Superior Court Judge John Matheussen's handling of their state custody matter. Plaintiffs filed a "Motion for an Emergency Hearing" seeking the return of their son in their state case on March 15, 2021. (Compl. ¶ 6). It seems that Judge Matheussen interpreted Plaintiffs' Motion to be an order to show cause, which he denied pending a full hearing on March 23, 2021. *See* (ECF No. 2-1, Ex. 2 at 45). Plaintiffs allege that Judge Matheussen "acted as [their] adversary" during the initial hearing on their Motion on March 15, making "facial expressions rolling his eyes" when Plaintiffs presented their

---

[2] All facts are drawn from Plaintiffs' Complaint and the attached exhibits. (ECF No. 2).

2

arguments. (Compl. ¶ 6). Further, Plaintiffs appear to complain that the March 15 hearing was held via video conference rather than in person, as they requested. (*Id.*). Plaintiffs also state that Judge Matheussen again "acted as [their] adversary" during the March 23rd hearing. (*Id.* ¶ 10). As such, Plaintiffs believe that they "will not receive fair, equitable and equal treatment" during an upcoming hearing—which was scheduled for April 7, 2021—due to Judge Matheussen's "clear bias towards [them] and noticeable favoritism toward [the NJDCPP]." (*Id.* ¶ 11).

On July 8, 2021, the Superior Court moved to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 18, "Def. Mot."). Plaintiffs filed a motion in opposition, (ECF No. 19, "Pl. Opp'n Mot."), to which the Superior Court replied on August 8, 2021, (ECF No. 21).

## II.   LEGAL STANDARD

### a.   Motion to Dismiss Under Rule 12(b)(1)

Federal Rules of Civil Procedure 12(b)(1) allows a court to dismiss a complaint for lack of subject matter jurisdiction. Subject matter jurisdiction is the court's authority to hear a case. The plaintiff generally has the burden of establishing that a court has subject matter jurisdiction to hear their case. *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009).

The defendant can challenge whether the plaintiff has met this burden, through a facial challenge or a factual challenge to the complaint. *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017). A motion to dismiss for lack of subject matter jurisdiction filed prior to an answer and without the presentation of competing facts is, by default, a facial challenge. *Long v. SEPTA*, 903 F.3d 312, 320 (3d Cir. 2018). In a facial challenge, such as here, the court looks to the face of the complaint and accepts as true the facts alleged by the plaintiff. *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016).

If the court cannot conclude from face of the complaint and attached exhibits that jurisdictional requirements are met, then the court must dismiss the complaint. *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d at 633 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Thus, a facial challenge "calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6)[.]" *Constitution Party v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

### b. Motion to Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a Rule 12(b)(6) motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint that merely contains "labels and conclusions" or "'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient to overcome a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

### c. Pro Se Litigants

Where litigants are proceeding pro se, the court "must liberally construe [the plaintiff's] pleadings, and … 'apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name.'" *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)). The Court need not, however,

credit a pro se plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citation omitted).

### III.   DISCUSSION

Plaintiffs' Complaint is very difficult to follow. Plaintiffs assert claims for constitutional violations pursuant to 18 U.S.C. § 242 and seek a "writ of prohibition" to prevent Judge Matheussen from continuing to presiding over their state custody case. (Compl. ¶¶ 11-13). As an initial matter, a federal district court has no jurisdiction issue a writ of prohibition as to a state court. *In re Wallace*, 405 F. App'x 580, 581 (3d Cir. 2011) (explaining that federal courts have no mandamus or prohibition jurisdiction over state courts). Additionally, § 242 is a penal statute that does not supply a private civil cause of action. *See* 18 U.S.C. § 242; *Carpenter v. Ashby*, 351 F. App'x 684, 688 (3d Cir. 2009) (noting that § 242 does not create a civil cause of action).

Nonetheless, construing Plaintiffs' pleadings liberally, we read the Complaint to plead claims for violations of their constitutional rights pursuant to 42 U.S.C. § 1983. Though difficult to surmise, it appears Plaintiffs seek injunctive relief here in the form of the return of A.B.P. and the recusal of Judge Matheussen in Plaintiffs' state court custody case. *See* (Compl. ¶¶ 6, 11, 13).

The Superior Court has moved to dismiss Plaintiffs' Complaint, arguing that: (1) the Superior Court is immune from suit in federal court under the Eleventh Amendment; (2) the Superior Court is not a "person" subject to suit under § 1983; and (3) the Court should abstain from hearing this case pursuant to the *Younger* abstention doctrine. (Def. Mot. 5-9). We will address each argument in turn, beginning with the abstention issue.

#### a.   Younger Abstention

Given that the instant action is based entirely on Plaintiffs' ongoing state court custody case, the *Younger* abstention doctrine requires dismissal of Plaintiffs' Complaint. The *Younger*

doctrine reflects the "strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982).

Pursuant to the U.S. Supreme Court's decision in *Sprint Commc'ns., Inc. v. Jacobs*, 571 U.S. 69 (2013), "*Younger* abstention is only appropriate in three types of underlying state cases: (1) criminal prosecutions, (2) civil enforcement proceedings, and (3) 'civil proceedings involving orders in furtherance of the state courts' judicial function.'" *PDX N., Inc. v. Comm'r New Jersey Dep't of Lab. & Workforce Dev.*, 978 F.3d 871, 882 (3d Cir. 2020) (citation omitted). After determining that the underlying state proceeding falls within one of these categories, a court then considers three "additional factors" known as the *Middlesex* factors. *Malhan v. Sec'y United States Dep't of State*, 938 F.3d 453, 462 (3d Cir. 2019) (citing *Sprint Commc'ns, Inc.*, 571 U.S. at 77–78). The *Middlesex* factors ask: "(1) whether there are 'ongoing judicial proceeding[s]'; (2) whether those 'proceedings implicate important state interests'; and (3) whether there is 'an adequate opportunity in the state proceeding to raise constitutional challenges.'" *PDX N., Inc.*, 978 F.3d at 882 (quoting *Middlesex Cnty. Ethics Comm*., 457 U.S. at 432).

Here, Plaintiffs' state court case constitutes a civil enforcement action. Civil enforcement proceedings are proceedings "'akin to a criminal prosecution' in 'important respects.'" *Malhan*, 938 F.3d at 463 (quoting *Sprint*, 571 U.S. at 79). To determine whether a state proceeding qualifies as a quasi-criminal civil enforcement action, courts in this Circuit look to see if:

> (1) [T]he action was commenced by the State in its sovereign capacity, (2) the proceeding was initiated to sanction the federal plaintiff for some wrongful act, and (3) there are other similarities to criminal actions, such as a preliminary investigation that culminated with the filing of formal charges. ... We also consider whether the State could have alternatively sought to enforce a parallel criminal statute.

*PDX N., Inc.*, 978 F.3d at 882-83 (citations omitted).

The Third Circuit discussed the issue of *Younger* abstention in the context of a state custody action in a recent unpublished case, *Vaughn:Douce v. New Jersey Division of Child Protection & Permanency*. No. 21-1596, 2021 WL 3403670 (3d Cir. Aug. 4, 2021). In *Vaughn:Douce*, the parent plaintiff filed a federal suit against the NJDCPP for violations of his constitutional rights related to a state court custody action to terminate his parental rights and sought, among other things, injunctive relief "in the form of custody of his daughter." *Id.* at *1. The district court dismissed the parent's complaint on several grounds, including *Younger*. *Id.* at *2. On appeal, Third Circuit noted that "[i]n *Sprint,* the Supreme Court noted that *Younger* has been extended to certain 'civil enforcement proceedings,' and cited as an example a case involving 'state-initiated proceedings to gain custody of children allegedly abused by their parents'." *Id.* (quoting *Sprint Commc'ns., Inc.*, 571 U.S. at 79). Affirming the district court's decision to abstain from hearing the case pursuant to *Younger*, the Third Circuit found that:

> Because Appellant's allegations and state-court exhibits establish that NJDCPP, a state agency, conducted an investigation and initiated the proceedings by filing a formal complaint against him to terminate his parental rights in favor of NJDCPP as legal guardian for purposes of pursuing adoption for the child, we agree that this case falls within the civil-enforcement-proceedings extension of *Younger* abstention.

*Id.*

We find *Vaugh:Douce* instructive here. As in *Vaugh:Douce*, NJDCPP, a state agency, formally initiated the Superior Court custody action against Plaintiffs. *See* (ECF No. 2-1, Ex. 2 at 24-25); (ECF No. 2-1, Ex. 5 at 45) (listing the New Jersey Division of Child Protection and Permanency as the plaintiff in the case caption). The case commenced after NJDCPP employees removed A.B.P. from Plaintiffs' custody on an emergency basis pursuant to N.J.S.A. 9:6-8.29 and 9:6-8.30. (ECF No. 2-1, Ex. 2 at 24-25). Further, the State of New Jersey brought criminal charges against Plaintiff Figueroa for child abuse or neglect under N.J.S.A. 9:6-3, apparently

7

based on the same facts that prompted the removal of A.B.P. and the subsequent state court custody action, though those charges were dismissed on February 24, 2021. (ECF No. 2-1, Ex. 1 at 22-23); (Compl. ¶ 7). In this context, we conclude that the underlying state proceeding in this case constitutes a quasi-criminal civil enforcement proceeding under *Sprint*.

We now turn to the *Middlesex* factors. As to the first factor, Plaintiffs' state court matter was pending before the New Jersey Superior Court when Plaintiffs filed their federal suit on March 29, 2021. (Compl. ¶¶ 10, 11). From the most recent information available to the Court, it appears that those judicial proceedings are ongoing. *See* (Def. Mot. 8-9); (Def. Reply 3-4). As to the second factor, it is well established that "the protection of children from abuse and neglect is an important state interest." *Howard v. New Jersey Div. of Youth & Fam. Servs.*, 398 F. App'x 807, 811 (3d Cir. 2010). As to the final factor, Plaintiffs may raise the same constitutional challenges to the removal of A.B.P. in their state court case and any challenges to the state court proceedings themselves in an appeal to the New Jersey Appellate Division. *See* N.J.S.A. § 9:6-8.70 ("An appeal from a final order or decision in a case involving child abuse may be taken as of right to the Appellate Division of the Superior Court."). Plaintiffs have not met their burden of showing that "that state procedural law barred presentation of [their] claims." *Greco v. Bruck*, No. 21-1035, 2021 WL 5276674, at *3 (3d Cir. Nov. 12, 2021) (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987)). Thus, the *Middlesex* factors are satisfied.

Since Plaintiffs' pending state court custody action is a civil enforcement proceeding and all *Middlesex* factors favor abstention, *Younger* abstention is necessary here.[3] As such, Plaintiffs'

---

[3] We note that "*Younger* abstention is not appropriate when (1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist." *Lazaridis v. Wehmer*, 591 F.3d 666, 670 n.4 (3d Cir. 2010). The bad faith exception only applies when the state proceeding "is brought 'without hope' of success." *Getson v. New Jersey*, 352 F. App'x 749, 753 (3d Cir. 2009) (quoting *Perez v. Ledesma*, 401 U.S. 82, 85 (1971)). In addition, "[t]he state agency or court must be 'incapable of fairly and fully adjudicating the federal issues before it' for [the extraordinary circumstances] exception to apply." *Id.* at 754 (quoting *Kugler v.*

Complaint must be dismissed. The Court understands Plaintiffs' urgent desire to regain custody of their son. However, Plaintiffs' continued participation in the state court case and, if necessary, appeal to the state appellate court is the proper course of action in this case.

### b. Eleventh Amendment Immunity

The Superior Court also argues that it is immune to suit in federal court under the Eleventh Amendment. (Def. Mot. 5-7). The Eleventh Amendment provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI.

The Eleventh Amendment acts as "'a jurisdictional bar which deprives federal courts of subject matter jurisdiction' over actions against a State." *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 280 (D.N.J. 2013) (quoting *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996)). "The Amendment has been interpreted to protect an unconsenting state from 'suit in federal court by its own citizens as well as those of another state.'" *Blanciak*, 77 F.3d at 694 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). Indeed, "[w]hether for monetary damages or for injunctive relief, any suit against a state in federal court is barred under the Eleventh Amendment." *Camden Cty. Recovery Coal. v. Camden City Bd. of Educ. For Pub. Sch. Sys.*, 262 F. Supp. 2d 446, 448 (D.N.J. 2003) (citing *Cory v. White*, 457 U.S. 85, 90-91 (1982)). This immunity extends to entities deemed "'arms of the State'—entities that, by their very nature, are so intertwined with the State that any suit against them renders the State the 'real, substantial party in interest.'" *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 83 (3d Cir. 2016) (citation omitted).

---

*Helfant*, 421 U.S. 117, 125 (1975)). Plaintiffs' conclusory allegations of bad faith and bias are insufficient to show that either exception applies here.

9

It is clear that "the state courts, its employees, and the judges are entitled to immunity under the Eleventh Amendment because they are part of the judicial branch of the state of New Jersey, and therefore considered 'arms' of the state." *Dongon v. Banar*, 363 F. App'x 153, 156 (3d Cir. 2010) (citing *Johnson v. State of N.J.*, 869 F. Supp. 289, 296-98 (D.N.J. 1994)); *Saravia v. Camden Cty. Superior Ct. Crim. Div.*, No. 20-9799, 2021 WL 1660909, at *3 (D.N.J. Apr. 28, 2021) ("New Jersey Superior Courts are subject to Eleventh Amendment immunity."). Plaintiffs' claims against the Superior Court of New Jersey are barred by the Eleventh Amendment and, accordingly, must be dismissed.

### c. 42 U.S.C. § 1983

The Superior Court also argues that it is not a "person" under § 1983. (Def. Mot. 7-8). We agree. Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

42 U.S.C. § 1983.

The U.S. Supreme Court has held that states and state entities are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66-67 (1989). The Superior Court of New Jersey, as an arm of the state, is not a "person" within the meaning of § 1983. *Ray v. New Jersey*, 219 F. App'x 121, 124 (3d Cir. 2007) ("[The plaintiff] also cannot state a claim against the Superior Court of New Jersey because that party is not a 'person' subject to liability under § 1983.") (citing *Will*, 491 U.S. at 70-71)). This is true even when a plaintiff seeks injunctive relief. *Calhoun v. Young*, 288 F. App'x 47, 50 (3d Cir. 2008) (upholding the dismissal of a case seeking damages and injunctive relief against the State of New Jersey "because a State

10

is not a person for purposes of § 1983."). For this reason, too, Plaintiffs' § 1983 claims against the Superior Court must be dismissed.

Plaintiffs seem to argue in their Opposition Memorandum that they have asserted claims against Judge Matheussen, not the New Jersey Superior Court.[4] (Pl. Opp'n Mot. 1-5). Even if the Court were to construe the Complaint to name Judge Matheussen as a defendant, the outcome here would not change. As with the Superior Court, the Eleventh Amendment bars claims against the judge in his official capacity. *See Dongon*, 363 F. App'x at 156. Plaintiffs' claims against Judge Matheussen arise from his rulings and conduct during the course of Plaintiffs' state court proceedings—namely, actions taken in his official capacity as a judge.[5] Further, § 1983 provides that injunctive relief is not available in suits brought against judges for actions taken in their judicial capacity "unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *see Azubuko v. Royal*, 443 F.3d 302, 304 (3d Cir. 2006). Plaintiffs make no argument that these exceptions apply in the instant case.

## IV. CONCLUSION

For the reasons contained herein, Defendant's Motion to Dismiss (ECF No. 18) is **GRANTED**. Plaintiffs' Motion (ECF No. 19) is **DENIED**. An accompanying Order will issue.

Dated: 01/21/22                                           /s/Robert B. Kugler
                                                          ROBERT B. KUGLER
                                                          United States District Judge

---

[4] While Plaintiffs do not name Judge Matheussen in the caption of their Complaint, they do name Judge Matheussen in the body of the Complaint. (Compl. ¶¶ 6, 10, 11).

[5] Defendants argue in a footnote that absolute judicial immunity would require dismissal of any claims against Judge Matheussen. However, "[i]t is settled that absolute judicial immunity extends only to claims for damages[.]" *Larsen v. Senate of Com. of Pa.*, 152 F.3d 240, 249 (3d Cir. 1998); *see also Kornafel v. Del Chevrolet*, 788 F. App'x 895, 897 (3d Cir. 2020) (citing *Larsen*). Here, Plaintiff appears to be seeking injunctive relief.